Connor L. Cantrell, Esq., clc@thlf.com, Utah Bar No. 15319
Attorney for Liberty Mutual Insurance Company and The
Ohio Casualty Insurance Company
The Hustead Law Firm, A Professional Corporation
4643 S. Ulster Street, Suite 1250
Denver, CO 80237
303-721-5000

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY AND THE OHIO CASUALTY INSURANCE COMPANY,<br><br>**Plaintiff,**<br><br>v.<br><br>BIGG ROCK EXCAVATING, INC. f/k/a BIGG ROCK EXCAVATING, LLC, RICHARD ROSE AND CINDY ROSE,<br><br>**Defendants.** | Civil Action No.: 1:20-cv-00147-CMR<br><br><br><br>**COMPLAINT** |

Plaintiff, Liberty Mutual Insurance Company and The Ohio Casualty Insurance Company (collectively, "Plaintiff," "Liberty," or "Surety"), submits its Complaint against Defendants Bigg Rock Excavating, Inc. f/k/a Bigg Rock Excavating, LLC (collectively, "Bigg Rock"), Richard Rose, and Cindy Rose (collectively, the "Individual Indemnitors") (Bigg Rock and the Individual Indemnitors are referred to collectively as "Defendants").

## I.   PARTIES

1. Liberty is a company organized and incorporated under the laws of the State of Massachusetts, with its principal place of business located at 175 Berkeley Street, Boston, MA 02116.

2. Bigg Rock is a domestic Utah corporation organized pursuant to the laws of Utah and an Indemnitor of Liberty that conducted business in the State of Utah with its principal place of business at 4028 West 5300 South, Roy, UT 84067.

3. Richard Rose is an Individual Indemnitor of Liberty, who has expressed an intent to remain in Utah indefinitely, and whose last known residence address is 4028 West 5300 South, Roy, UT 84067.  Mr. Rose is Bigg Rock's CEO and registered agent and holds an ownership interest in Bigg Rock.

4. Cindy Rose is an Individual Indemnitor of Liberty, who has expressed an intent to remain in Utah indefinitely, and whose last known residence is 4028 West 5300 South, Roy, UT 84067.  Ms. Rose is the wife of Richard Rose and holds an ownership interest in Bigg Rock through marital right.

## II.   JURISDICTION AND VENUE

5. Liberty hereby incorporates by reference all the allegations contained above as set forth herein.

6. This Court has personal jurisdiction over the Defendants because Bigg Rock transacted business in and around Salt Lake City, Utah, including, but not limited to, performing construction work in and around Salt Lake City, Utah and entering into contracts with Liberty in which Defendants promised to post collateral with Liberty as set forth in the contracts and to

reimburse Liberty for, among other things, any losses, expenses, payments, attorneys' fees, costs incurred by Liberty in the event Liberty incurs losses as a result of issuing construction surety bonds on behalf of Bigg Rock. As such, Bigg Rock and the Individual Indemnitors – all Defendants – purposefully availed themselves of the benefits and privileges of conducting business in Utah.

7. This Court has original subject matter jurisdiction over Liberty's claims pursuant to 28 U.S.C. § 1332 (diversity) because the amount of Liberty's claims against Defendants exceeds $75,000, and Liberty is a citizen of a different state than each of Bigg Rock and the Individual Indemnitors.

8. As set forth above, Liberty is a citizen of Massachusetts, where Liberty is incorporated and where its principal place of business is located. As set forth above, Bigg Rock is a citizen of Utah, where Bigg Rock is incorporated and where its principal place of business is, while the Individual Indemnitors are each domiciled in Utah and therefore citizens of Utah.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Liberty's claim occurred in or around Salt Lake City, Utah.

### III.  GENERAL ALLEGATIONS

10. Liberty hereby incorporates by reference all the allegations contained above as though set forth herein.

**A.  The Bonds**

11. Liberty, as Surety, has issued construction payment and performance bonds ("Bonds") on behalf of Bigg Rock, as principal, for at least the following construction projects ("Projects"), including but not limited to:

| **Obligee** | **Project** | **Bond Amount** |
|---|---|---|
| Trinity Management Group | Bird Creek Campground Project (Bond No. 609201714) | $160,189.00 |
| Trinity Management Group | Brush Creek Utility Project – Saratoga Bunkhouse Phase I (Bond No. 609201715) | $255,338.00 |

12. Pursuant to the terms of the Bonds and prevailing law, Liberty guaranteed that if Bigg Rock failed to take certain actions, the underlying bonded obligation would become due, and Liberty would pay the debt. The penal sums of the Bonds exceed FOUR HUNDRED THOUSAND DOLLARS ($400,000). A copy of the Bonds is attached hereto as **Exhibit 1**.

B. **The Indemnity Agreements**

13. As consideration for Liberty issuing the Bonds and other consideration, on or about September 4, 2018, Bigg Rock and the Individual Indemnitors executed an Agreement of Indemnity (herein referred to as the "GIA") in favor of Liberty. A copy of the GIA is attached as **Exhibit 2** and incorporated here by reference.

14. The GIA provides, in pertinent parts (emphasis added):

    3.    **Indemnity**: *Indemnitor shall exonerate, indemnify and hold harmless Surety from and against any and all Loss*;

    4.    **Place in Funds**: *Indemnitor shall place Surety in funds immediately upon demand in the amount Surety deems necessary to protect itself from any Loss or potential Loss*, Surety having the right to use all or part of the funds in payment, settlement, or reimbursement to itself of any Loss;

    5.    **Assignment**: (I) <u>Scope</u>: *Indemnitor assigns and pledges to Surety as security, a lien and security interest in its interest, title, and rights in and growing out of the following: (a) any bonded contract, any agreement related to a bonded contract including any labor or supply subcontract and any Bond in support thereof, and any action, claim or demand which Indemnitor may acquire against any party to these contracts or otherwise related to a bonded contract*; (b) all

4

    machinery, supplies, equipment, plant, tools, and materials which are or may be on the site of the bonded contract, including materials purchased, being constructed, in storage, or in transit; (c) to the extent Surety determines necessary to fulfill or complete bonded obligations: licenses, patents, copyrights, trade secrets, limited partnership and general partnership interests; (d) any funds that are due or may become due on a bonded contract or other contract, including retention and recovery from claims. (II) <u>Exercise of Rights by Surety</u>: *The assignment is effective upon the date of this Indemnity Agreement, but the Surety may exercise its rights only if Indemnitors: (i) breaches a bonded contract, Bond or the Agreement; (ii) is declared in default by a Bond obligee or payment bond claim is made*; (iii) makes as assignment for the benefit of creditors; an application for the appointment of a trustee or receiver is made; or files an application under the Bankruptcy Code or similar laws or any state; (iv) is subject to any proceeding which deprives it of the use of the materials referred to in (b), above; (v) is debarred or otherwise declared ineligible for public work; and (vi) if an individual, an Indemnitor's death, disappearance, incompetence, insolvency, conviction of a felony or imprisonment.

8.     **Surety's Rights**: (a) <u>Loss</u>: *Surety has the right at its sole discretion to pay or settle any Loss and the sworn voucher of payment signed by the Surety shall be prima facie evidence of Indemnitor's liability*; (b) <u>Suits</u>: *Surety may bring separate lawsuits to recover under the Agreement, and doing so or recovering by way of judgment upon a cause of action shall not prejudice or bar the bringing of suits upon other causes of action, whenever they may arise*; (c) <u>Other Agreements</u>: *Any rights Surety may have or acquire against Indemnitor under the Agreement are in addition to an not in lieu of any rights afforded Surety under any other agreement related to surety credit; and, if Surety executes any Bond with a co-surety or reinsures all or part of a Bond, all the terms of the Agreement shall apply and operate for the benefit of the co-surety and reinsurer, as their interests may appear*; (d) <u>Decline or Cancel Bonds</u>: Surety shall have the right to decline or cancel a Bond at any time, free of claim for loss or damage by Indemnitor, and Surety shall be under no obligation to disclose its reasons therefore, the provisions of any law to the contrary being hereby waived; (e) <u>Non-waiver</u>: the exercise, delay or failure by Surety to exercise any right, remedy or power whatsoever shall not preclude any subsequent exercise or

waiver of these or any other rights, remedies by the Surety; (f) <u>Book and Records</u>: *At any time, Surety shall have the right of reasonable access to the books, records and/or accounts of Indemnitors and Principals for the purpose of inspection, copying or reproduction. Failure to provide such access shall be a breach of this Agreement, and shall entitle Surety to demand, in its sole discretion, collateral, in a form acceptable to Surety, up to the penal sum of any outstanding Bond(s).*

15. Pursuant to the GIA, Bigg Rock and the Individual Indemnitors agreed, among other things, to exonerate, indemnify, and hold Liberty harmless from any and all liability for losses, costs, damages, attorneys' fees, and expenses of whatever kind that Liberty may sustain or incur by reason of having executed any bonds for or at the request of Bigg Rock. Bigg Rock and the Individual Indemnitors also promised to place Liberty in funds sufficient to cover any and all actual and potential liability that Liberty might incur as a result of claims on any bonds.

16. By virtue of the definitions and representations in the referenced GIA, Bigg Rock and the Individual Indemnitors are, *inter alia*, obligated to post collateral with Liberty, cooperate with Liberty's investigation into claims, and are jointly and severally liable to Liberty as set forth herein. The Defendants have these obligations at common law as well.

C. **Payments Made on Behalf of Bigg Rock**

17. To date, Liberty has received payment and performance bond claims on both the Projects alleging that Bigg Rock failed to properly pay for labor and materials or otherwise perform its obligations as a subcontractor. The claims currently total more than $368,000. The following is a sampling of claims received by the Surety:

   a. Core & Main submitted a payment bond claim to Liberty in the amount of $7,876.85 for Bigg Rock's alleged failure to pay for furnished materials on the Brush Creek Project. Liberty paid this claim on behalf of Bigg Rock.

6

    b. Wyoming Rents submitted a payment bond claim to Liberty in the amount of $20,772.58 for Bigg Rock's alleged failure to pay for furnished materials on the Brush Creek Project. Liberty paid this claim on behalf of Bigg Rock.

    c. Wheeler Machinery submitted a payment bond clam to Liberty and initiated litigation against Liberty and Bigg Rock, alleging damages in excess of $82,000.[1] Liberty settled this claim for $94,000 on behalf of Bigg Rock.

    d. Trinity Management Group submitted a performance bond claims to Liberty for Bigg Rock's alleged failure to complete its scope of work on the Brush Creek Project and Bird Creek Project. Liberty was forced to mediate with Trinity in order to resolve the outstanding claim. As a result, Liberty paid approximately $209,915.99 to Trinity to resolve the claims associated with the Projects.

18. As of October 3, 2020, the total outstanding balance of funds owed to Liberty for satisfaction of payment bond claims and surety advances is at least $368,725.80.

19. Through September 30, 2020, Liberty has incurred over $52,038.50 in attorneys' fees, costs and expenses, and expects to continue incurring attorneys' fees, costs, and expenses on a near daily basis until this matter is resolved.

20. As a result of these claims and accruing costs, Liberty is exposed to substantial losses under its Bonds, for which Bigg Rock and the Individual Indemnitors are jointly and severally liable.

21. In an attempt to ascertain Bigg Rock's financial condition and status of projects (including an accounting of amounts received from project owners and amounts owed/paid to subcontractors and suppliers), Liberty repeatedly sent Bigg Rock and the Individual Indemnitors requests to review Bigg Rock's sworn financial statements.

---

[1] Wheeler Machinery initiated a proceeding in the U.S. District Court for the District of Wyoming on February 6, 2020 (Case No. 20CV00012-ABJ), where Wheeler was seeking damages related to Bigg Rock's Bonds. The case settled in May 2020 and Wheeler dismissed the action against Liberty on June 16, 2020.

22. Bigg Rock failed or refused to provide to Liberty with access to Bigg Rock's financial statements, bank statements, and related financial condition.

23. Upon information and belief, Richard Rose is currently working for Tycoon Construction, LLC in West Jordan, UT and has likely received funds from work on construction projects.

24. Instead of using these funds to repay Liberty pursuant to the GIA, Richard Rose has used funds for his own purposes and to benefit the Individual Indemnitors, leaving Liberty exposed to losses.

25. Liberty is concerned that there will be a shortfall on funds available to repay Liberty for Bigg Rock's Projects pursuant to the GIA.

D.     **Liberty's Demands for Indemnity**

26. On or about September 1, 2020, formal notice and demand was made on behalf of Liberty to Bigg Rock and the Individual Indemnitors regarding their joint and several duties to defend and indemnify Liberty from and against all liability and loss relating to Bigg Rock's Projects, including, but not limited to, bond payments, costs, accrued interest, and attorneys' fees. A copy of the September 1, 2020 indemnity demand is attached at **Exhibit 3** and incorporated herein by reference.

27. Liberty has made repeated informal indemnity demands via emails and requested financial information from Bigg Rock.

28. Liberty has not received a response to these demands from Bigg Rock or the Individual Indemnitors indicating that they will comply with their obligations under the GIA.

29.     The failure of Bigg Rock and the Individual Indemnitors to respond to Liberty's indemnity demands has exacerbated Liberty's concerns about Bigg Rock and the Individual Indemnitors' ability and intention to satisfy bonded obligations.

30.     Unless and until the injunctive relief requested herein is granted, there is a clear and present threat that Liberty will lose the benefit of its bargains with the Defendants.  Since all defaults have occurred, claims have been paid, and Liberty is now forced to initiate litigation against Bigg Rock, Liberty is entitled to its protections guaranteed by the GIA and common law.

31.     Bigg Rock and the Individual Indemnitors must grant full and immediate access to their financial condition and immediately post collateral of no less than $100,000.00, failing which Liberty should be entitled to liens as requested herein.  This is nothing more than what is dictated by the GIA or equitable under the circumstances.

### FIRST CLAIM FOR RELIEF
### (Breach of Express Contract Against All Defendants)

32.     Liberty hereby incorporates by reference all the allegations contained above as though fully set forth herein.

33.     The Defendants entered into valid and enforceable contract, the GIA, with Liberty.

34.     Sufficient consideration supports the GIA.

35.     Liberty substantially performed its obligations, if any, under the GIA.

36.     The Defendants failed to meet their obligations under the GIA, which constitutes a material breach.

37.     Defendants' breach of the GIA has damaged Liberty, and Defendants are liable to Liberty for all losses and expenses incurred by Liberty as a result of the issuance of the Bonds,

including, but not limited to, bond payments, attorneys' fees, consultant fees, expenses, and costs, all as provided by the terms of the GIA.

## SECOND CLAIM FOR RELIEF
### (Common Law Indemnification Against Bigg Rock)

38. Liberty hereby incorporates by reference all the allegations contained above as though fully set forth herein.

39. Bigg Rock, as the principal under the Bonds, is required to indemnify and hold Liberty harmless from and against any and all liabilities, losses and expenses of any kind of nature, including, but not limited to, interest, court costs, expenses and attorney and consultant fees, imposed upon, sustained or incurred by Liberty on account of the issuance of the Bonds.

40. Liberty has made demand upon Bigg Rock to be indemnified and placed in funds for all losses sustained or to be sustained as a result of the issuance of the Bonds.

41. Bigg Rock has failed to meet its obligations to Liberty under Utah law.

42. Bigg Rock's failure to meet its obligations to Liberty under Utah law has damaged Liberty, and Liberty is entitled to damages.

## THIRD CLAIM FOR RELIEF
### (Injunctive Relief – Specific Performance Against All Defendants)

43. Liberty hereby incorporates by reference the allegations contained above as though fully set forth herein.

44. Pursuant to the GIA, the Defendants are required to place Liberty in sufficient funds to cover any and all losses or expenses, including attorneys' and consultant's fees and costs, incurred or to be incurred by Liberty as a result of the issuance of the Bonds.

45. There is no adequate remedy at law for Liberty to recover the benefit of the GIA.

46. Liberty has performed any obligations owed to the Defendants under the GIA and/or Bonds.

47. Liberty requests specific performance on the provisions of the GIA, which requires Defendants to grant access to books and records and/or to place Liberty in sufficient funds to cover any possible liability or loss for which Defendants are or will be obligated to indemnify Liberty under the terms of the GIA.

48. If Defendants have not or cannot place Liberty in sufficient funds, Liberty requests an equitable lien in the amount of no less than ONE HUNDRED THOUSAND DOLLARS ($100,000.00) ("Lien Amount") on any real property owned by the Defendants including, but not limited to, 4028 West 5300 South, Roy, UT 84067 (the "Property).

49. If the Defendants do not or cannot place Liberty in sufficient funds, Liberty requests that Bigg Rock enter into a monthly repayment plan based on Liberty's review of Bigg Rock's books and records in order to indemnify Liberty under the terms of the GIA.

### FOURTH CLAIM FOR RELIEF
### (Injunctive Relief – *Quia Timet* Against All Defendants)

50. Liberty hereby incorporates by reference the allegations contained above, as though fully set forth herein.

51. Under the equitable doctrine of *quia timet*, Liberty is entitled to have Defendants place funds or other security with Liberty sufficient to cover any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including but not limited to, pre- and post-judgment interest at the maximum rate permitted by law accruing from the date of the breach of the GIA or a breach of other agreements, court costs, counsel fees, costs of investigation, accounting, engineering, construction management and any other outside consulting

fees from and against any and all such losses, fees, costs and expenses, which Liberty may sustain or incur by reason or consequence of having issued the Bonds as set forth more fully above and in the GIA.

52. Despite demand, Defendants have failed to place Liberty in such funds in direct contravention of Liberty's *quia timet* rights.

53. Pursuant to the terms of the Bonds, Liberty has guaranteed that if Bigg Rock fails to take certain actions, the underlying bonded obligation will become due, and Liberty will pay the debt.

54. Unless Liberty obtains an Order establishing equitable liens, Liberty will not be adequately secured for its obligations under the Bonds.

55. If Liberty is unable to obtain an Order requiring Defendants to place Liberty in collateral as requested in Liberty's demands, Liberty will be irreparably harmed.

56. Liberty is without a plain, speedy, or adequate remedy at law, pecuniary compensation would not afford adequate relief, it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief, and Liberty will be irreparably and permanently injured unless this Court grants the injunctive and equitable relief requested herein.

57. Liberty is entitled to preliminary and permanent injunctive relief enforcing its *quia timet* rights and granting Liberty a valid equitable lien in the Lien Amount upon all assets and real property in which the Defendants have an interest, such liens to remain in place until Liberty has been placed in funds, and restraining Bigg Rock and the Individual Indemnitors from transferring, disposing, or otherwise liquidating any property owned by Defendants, real or personal, beyond reasonable living expenses, during the pendency of this matter.

58. Liberty should also be given a valid equitable security interest in the Lien Amount on any and all rights, title and interest of Defendants in and to all items, property, documents, etc. identified in the GIA.

59. Upon information and belief, Defendants have equity in the Property described above and/or have received and continue to receive income and/or other intangible benefits from the operation of Bigg Rock as a direct result of Liberty's issuance of the Bonds or other agreements. The interests of equity and fairness dictate that such equity, income and/or other intangible benefits be converted to equitable liens until Liberty is repaid.

## FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment – Equitable Liens Against All Defendants)

60. Liberty hereby incorporates by reference the allegations contained above, as though fully set forth herein.

61. Liberty conferred a benefit on Defendants by extending surety credit and/or issuing the Bonds on behalf of Bigg Rock.

62. Defendants accepted and appreciated that benefit by profiting from Bigg Rock's operations, which would not have been possible without the issuance of Liberty's surety credit and/or the Bonds.

63. Defendants further accepted and appreciated that benefit by virtue of the equity in their real and personal property as a direct result of these profits, which equity would not have been possible without the issuance of Liberty's surety credit and/or the Bonds.

64. Defendants agreed to defend, indemnify, and post collateral with Liberty in exchange for and pursuant to the terms of the GIA.

65. By failing and refusing to do so, Defendants have been and will continue to be unjustly enriched by keeping funds or other collateral to which Liberty is entitled pursuant to the GIA and/or common law.

66. It would be inequitable for Defendants to retain the benefit of Liberty's surety credit and/or the Bonds without complying with their concomitant obligations under the GIA and/or common law to post collateral as promised to protect Liberty from losses.

67. Under these circumstances and given the surety relationship between Liberty and Defendants, general considerations of right and justice dictate that Liberty be granted the right to have Defendants' assets applied to their obligation to post collateral with Liberty.

68. Liberty requests an equitable lien in the amount of no less than ONE HUNDRED THOUSAND DOLLARS ($100,000.00) ("Lien Amount") on any real property owned by the Defendants including, but not limited to, 4028 West 5300 South, Roy, UT 84067 (the "Property").

69. Liberty should also be given a valid equitable security interest, as collateral security in the Lien Amount, on any and all rights, title and interest of Defendants in and to all items, property, documents, etc. identified in the GIA

### SIXTH CLAIM FOR RELIEF
### (Declaratory Relief – Assignment Against All Defendants)

70. Liberty incorporates by reference the allegations contained above, as though fully set forth herein.

71. An actual and substantial dispute exists between Liberty and Defendants with respect to Liberty's right to be placed in funds and indemnified from loss under the Bonds.

72. A prompt and judicial determination of the respective rights of the parties in these respects is necessary and appropriate.

73. Pursuant to the GIA, Defendants assigned certain rights to Liberty, and the assignments have been triggered by Defendants' defaults under the Bonds and GIA.

74. Liberty seeks a declaratory judgment that any and all of the assignment provisions have been triggered and the assignments should be effectuated and enforced until such time that the Lien Amount is satisfied, and such amount is paid in good funds to Liberty.

Respectfully submitted this 29th day of October, 2020.

>The Hustead Law Firm
>*A Professional Corporation*
>
>*The Original Signature is on File at*
>*The Hustead Law Firm, A Professional Corporation*
>
>*s/Connor L. Cantrell, Esq.*
>Connor L. Cantrell, Esq.
>The Hustead Law Firm,
>*A Professional Corporation*
>4643 S. Ulster Street, Suite 1250
>Denver, CO 80237
>(303) 721-5000
>clc@thlf.com
>*Attorney for Liberty Mutual Insurance Company and The Ohio Casualty Insurance Company*

<u>Address of the Plaintiff:</u>
175 Berkeley Street
Boston, Massachusetts 02116